IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

VANNA L. YOUNG,

     Plaintiff,

vs.                                           Civ. No. 97-450 BB\LCS

KENNETH S. APFEL,
COMMISSIONER OF SOCIAL SECURITY,

     Defendant.

## MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

Proposed Findings

1.  This matter comes before the Court upon Plaintiff's Motion to Reverse and Remand for a Rehearing, filed March 10, 1998.  The Commissioner denied Plaintiff's request for both disability insurance and supplemental security income (SSI) benefits.  Plaintiff alleges a disability due to migraine headaches, degenerative disc disease, panic attacks with agoraphobia, somatoform pain, and depression.

2.  The Commissioner denied Plaintiff's applications for benefits both initially and on reconsideration.  After conducting an administrative hearing, the Commissioner's administrative law judge (ALJ) likewise denied the applications.  The Appeals Council did not review the ALJ's decision, thus the final decision of the Commissioner is the ALJ's decision.  Plaintiff now seeks review of that final decision pursuant to 42 U.S.C. §405(g).

3.  The standard of review in social security appeals is whether the Commissioner's final decision, in this case the ALJ's decision, is supported by substantial evidence.  **Thompson v.**

1

**Sullivan**, 987 F.2d 1482, 1487 (10th Cir. 1993)(citations omitted).  Additionally, the Commissioner's final decision can be reversed if the ALJ failed to apply the correct legal tests.  **Id**. (citation omitted).

4.  As a preliminary matter, the Plaintiff asks to amend her alleged onset date of August 31, 1990 to August 31, 1988.  To show that she is eligible for disability insurance benefits, the Plaintiff must demonstrate that she was disabled prior to March 31, 1988, the date she was last insured.  42 U.S.C. §416(I)(2)(c).  To show that she is eligible for full SSI benefits, the Plaintiff must demonstrate that she was disabled as of March 25, 1994, her SSI application date.   42 U.S.C. §1382(c)(2).  Amending the alleged onset date does not place the Plaintiff's impairments prior to the date she was last insured nor does it affect her ability to demonstrate SSI eligibility.  Permitting the amendment would mean that the Plaintiff could only show eligibility for SSI benefits, the same situation as without an amendment.  There being no substantial difference in the analysis of this case with the amendment, I will allow it.

5.  Plaintiff raises the following allegations of error with respect to the ALJ's decision:  1) the ALJ erred in not finding that the Plaintiff has a severe mental impairment at step two of the sequential evaluation process; 2) the ALJ erred when he found that the Plaintiff's past work as a cashier qualified as past relevant work under step four of the sequential evaluation process; 3) the ALJ erred when he found that the Plaintiff's nonexertional complaints, including pain, were not credible; 4) the ALJ failed to develop the record regarding the step four analysis; and 5) the ALJ erred when he failed to obtain a medical expert to determine the onset date of disability.

6.  "To qualify for disability benefits, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which

prevents the claimant from engaging in substantial gainful activity." **Id**. at 1486 (citing 42 U.S.C. §423 (d)(1)(A)).  To determine disability, the Commissioner has established a five step sequential evaluation process.  **Id**.  The sequential evaluation process ends if at any step the Commissioner finds that the claimant is disabled or not disabled.  **Id**. (citations omitted).  Steps two and four of the sequential evaluation process are at issue in this case.  At step two, the claimant must show that she has a severe impairment.  20 C.F.R. §§404.1520, 416.920. At step four, the claimant must demonstrate that she cannot perform her past relevant work. **Id**.

7.  The Plaintiff argues first that the ALJ erred when he found that the Plaintiff's mental impairment was not severe.  At that step two, the Plaintiff must show that she has an impairment or combination of impairments which are severe enough to limit her ability to do basic work activities.  20 C.F.R. §§404.1520(c), 416.920(c).  Basic work activities include, for example, physical functioning; ability to hear, see, and speak; ability to follow simple instructions; use of judgment; appropriate responses to fellow workers, supervisor, and usual work situations; and the ability to deal with changes in routine work.  **Id**. at §§404.1520(c), 416.921(b).  If the evidence is unclear as to whether the impairment is severe or not, the sequential evaluation process is continued.  Soc. Sec. Ruling 85-28.

8.  The ALJ in this case stated in his step two analysis that "[t]he claimant has responded to treatment, as evidenced by the lack of crisis intervention since June 1994, and by the effect prescribed medication consisting of elavil [sic].  This medication was alleviating the claimant's disturbed sleep as early as July 1994. ... Mental work related restrictions have not been medically noted from any treating or examining source." Tr. 20.  The Plaintiff contends that the ALJ's statement is not supported by substantial evidence.

3

9.  In June 1994, the Plaintiff was diagnosed as having a panic disorder with agoraphobia and somatoform pain disorder.  Tr. 115.  **See also** Tr. 195, 197. The director of Valencia Counseling Services, Inc. later diagnosed the Plaintiff with posttraumatic stress disorder, adjustment disorder with anxiety, and dysthymic disorder.  Tr. 133.  Notes also indicate subsequent recurrent major depression.  Tr. 136.  **See also** Tr.203, 217.  Moreover, one medical note stated that the Plaintiff suffered from "severe psychosocial stressors with her husband's continued substance abuse and financial difficulties."  Tr. 195.

10.  Plaintiff's treating neurologist, Dr. Marjama, however, observed that the Plaintiff's "anxiety level has markedly reduced" as a result of taking Inderal Tr. 174.  Plaintiff  also had "an excellent response to Xanax" for her severe anxiety and panic attacks.  **Id**.  The Plaintiff told Dr. Marjama that the Xanax "has been of extreme benefit in treatment of her symptoms."  **Id**.  Dr. Marjama subsequently concluded that the panic attacks were "stable."  Tr. 173.  **See also** Tr. 171. The Plaintiff further stated to a social security interviewer that she "[s]leeps very well now-no problems since Elavil."  Tr. 94.  The above evidence indicates that the Plaintiff has mental impairments which are amenable to treatment.  Even so, the record shows that the Plaintiff continued to seek help for anxiety and depression.  Tr. 192-220. In this case, there is no evidence which defines the frequency and duration of Plaintiff's mental impairments when the Plaintiff takes her medications.  For instance,  Dr. Marjama does not explain what she means by "stable" panic attacks.  Because the evidence is unclear as to whether the mental impairment is severe or not, the sequential evaluation process should be continued. That being so, I find that the ALJ's finding that the Plaintiff does not have a severe mental impairment is not supported by substantial evidence.

4

11.  The Plaintiff argues next that the ALJ erred when he found that the Plaintiff's past work as a cashier qualified as past relevant work.  The Plaintiff asserts that her earnings as cashier were not sufficient to constitute substantial gainful activity.  Plaintiff correctly states that past relevant work must consist of substantial gainful activity.  20 C.F.R. §§404.1565(a), 416.965(a).  Substantial work activity can be part-time work while gainful work is the "kind of work usually done for pay or profit, whether or not a profit is realized." 20 C.F.R. §§404.1572, 416.972.  Although substantial gainful activity may be presumed based on one's earnings, earnings that are not substantial do not necessarily indicate that a claimant cannot engage in substantial gainful activity.  20 C.F.R. §§404.1574(a)(1), 416.974(a)(1).  Consequently, a person who performs virtually all of the duties of a full-time employee but on a part-time basis and is paid accordingly will be found to have engaged in substantial gainful activity.  **See, e.g., Wolfe v. Shalala**, 997 F.2d 321, 324 (7th Cir. 1993); **Pickner v. Sullivan**, 985 F.2d 401, 403 (8th Cir. 1993).

12.  In this case, the Plaintiff argues that she did not make enough money as a cashier for that work to be considered substantial gainful activity.  She does not allege that the cashier work was the kind of work people usually do not get paid for.  Plaintiff fails to contend that she did not do virtually all of the duties of a full-time cashier except on a part-time basis and for a corresponding wage.  Under these circumstances, I find that the Plaintiff has failed to show that her cashier work was not substantial gainful activity.  I, therefore, find that there is substantial evidence to support the ALJ's finding that the cashier work is past relevant work.

13.  The Plaintiff next argues that the ALJ erred when he did not find credible the Plaintiff's allegations of disabling pain due to migraine headaches and muscle spasm.  To analyze properly a claimant's assertion of disabling pain, the ALJ must first determine whether the

claimant has established by objective medical evidence that he has a pain-producing impairment. **Musgrave v. Sullivan**, 966 F.2d 1371, 1375-76 (10th Cir. 1992)(citing **Luna v. Bowen**, 834 F.2d 161, 163-64 (10th Cir. 1987)).  If the claimant establishes a pain-producing impairment, then the ALJ must consider whether there is a "loose nexus" between the proven impairment and the subjective allegation of pain.  **Id**.  If the ALJ finds that there is a "loose nexus," the ALJ must decide whether after considering all of the objective and subjective evidence, the claimant's pain is in fact disabling.  **Id**. At this point, "the absence of an objective medical basis for the degree of severity of pain may affect the weight to be given to the claimant's subjective allegations of pain, but a lack of objective corroboration of the pain's severity cannot justify disregarding those allegations."  **Luna**, 834 F.2d at 165.

14.  In his pain discussion, the ALJ described the various signs of medically identified sources of the Plaintiff's pain.  Tr. 22.  He then determined that the Plaintiff  benefitted from treatment and therefore was not credible when she alleged disabling pain.  Tr. 23.  The record indicates that the Plaintiff told a social security interviewer that her "headaches are a great deal better on Elavil. I haven't been having headaches every day or two like I always have had since about 1986.  The Elavil has meant 1 or 2 milder headaches each week that resolve with Motrin, in about an hour."  Tr. 94-95.  When the Plaintiff abruptly ceased to take her headache medication she experienced "an extreme exacerbation of her headaches...."  Tr. 141. **See also** Tr. 138, 173. Dr. Marjama noted that with her medications, the Plaintiff enjoyed "a marked reduction in headaches occurring less than one per month.  They have also decreased significantly in intensity and duration."  Tr. 137.  Dr. Marjama concluded that the migraines were therefore "stable" with medications.  **Id**.  **See also** Tr. 171 ("good response to daily prophylactic medication"), 174

("marked reduction in frequency with the above medications"). The Plaintiff saw an orthopedic specialist for her neck and back pain on only three occasions.  Tr. 129-31.  The orthopedic specialist noted that the "headaches seem to be the presenting problem."  Tr. 129.

15.  The above evidence demonstrates that medication controls the Plaintiff's headaches. Moreover, the headaches appear to be a factor in the Plaintiff's allegation of neck and back pain. With the headaches under control, there is no mention of neck or back pain.  Consequently, I conclude that the ALJ's finding that the Plaintiff benefits from treatment is supported by substantial evidence.  The ALJ, therefore, did not err in his pain analysis nor did he err in concluding that the Plaintiff's allegation of disabling pain is not credible.

16.  The Plaintiff also contends that the ALJ erred by failing to develop the record with respect to his step four analysis. "Step four of the sequential analysis, at which the ALJ found plaintiff not disabled, is comprised of three phases.  In the first phase, the ALJ must evaluate a claimant's physical and mental residual functional capacity (RFC) - [must find to be work activity on a regular and continuing basis]; in the second, he must determine the physical and mental demands of the claimant's past relevant work . . . . In the final phase, the ALJ determines whether the claimant has the ability to meet the job demands found in phase two despite the mental and/or physical limitations found in phase one."  **Winfrey v. Chater**, 92 F.3d 1017, 1023 (10th Cir. 1996); (citing **Henrie v. United States Dep't of Health & Hum. Servs.**, 13 F.3d 359, 361 (10th Cir. 1993); Soc. Sec. Ruling 82-62).

17.  The Plaintiff complains that the ALJ failed to ask the Plaintiff questions at the administrative hearing pertaining to how the headaches and various mental problems (panic attacks, depression and post traumatic syndrome) affect her RFC.  The Plaintiff testified that her

major problem was not headaches but rather panic attacks.  Tr. 232.  The Plaintiff further testified

that with her headache medication she gets a migraine "[a] couple of times a month, maybe."  Tr.

233.  **See also** Tr. 235.  The Plaintiff also testified that if she is not relaxed, she will get a

headache despite the use of headache medication.  Tr. 235-36.  With respect to the alleged mental

problems, the Plaintiff testified that she cannot leave her house due to panic attacks.  Tr. 232,

236.  The Plaintiff noted that the various medications she takes for insomnia, depression and

anxiety do not help much.  Tr. 236. Plaintiff further stated that she did not feel that the

psychiatrist she sees is helping her.  Tr. 243. Plaintiff also stated that she is fearful of driving a car

and gets about five hours of sleep at night.  Tr. 240, 251.  The Plaintiff testified that she was not

having a difficult time dealing with the abuse she suffered during her first marriage.  Tr. 242.

However, the Plaintiff stated that she has not overcome the psychological abuse she suffered as a

child.  Tr. 254.  She also noted that she cries a lot.  Tr. 256.

      18.  "'Although a claimant has the burden of providing medical evidence proving

disability, the ALJ has a basic duty of inquiry to fully and fairly develop the record as to material

issues.'"  **Carter v. Chater**, 73 F.3d 1019, 1021 (10th Cir. 1996)(quoting **Baca v. Dept. of**

**Health & Human Servs.**, 5 F.3d 476, 479-80 (10th Cir. 1993)(citations omitted)). As already

discussed, the medical record and the Plaintiff's prior statements demonstrate that the Plaintiff's

headaches and panic attacks are controlled by medication. The questioning at the administrative

hearing elicited further information on the effectiveness of the headache medication. However, the

ALJ failed to ask questions regarding the frequency of the panic attacks and their duration.  **See**

**supra**, discussion regarding failure to define "stable."  He also failed to determine the frequency

and duration of the Plaintiff's alleged episodes of depression.  **Id**.  Finally, the ALJ did not explore

what harm the Plaintiff suffers now as a result of her traumatic childhood.  Without the above information, the ALJ could not have made a proper step four finding regarding the Plaintiff's RFC.  Consequently, I find that the ALJ erred in not developing the record as to the Plaintiff's mental impairment but fairly developed the record with respect to Plaintiff's headaches.

19.  The Plaintiff further asserts that the ALJ did not develop the record with regard to the mental and physical requirements of the Plaintiff's past work as a cashier.  The Plaintiff argues that the ALJ should have engaged a vocational expert to testify at the administrative hearing on that topic.  In the instant case, the ALJ made a finding of nondisability at step four of the evaluation process.  It is well settled that it is "[o]nly after a determination is made that [the] claimant suffers from an impairment or combination of impairments severe enough to preclude her from returning to her prior work activity" that an ALJ is required "to make an inquiry to determine what other employment is available to the claimant in the national economy."  **Glenn v. Shalala**, 21 F.3d 983, 988 (10th Cir. 1994).  Thus, the services of a vocational expert are only required in such situations when the inquiry reaches step five of the evaluation process.  Therefore, Plaintiff's argument attacking the omission of a vocational expert fails because the ALJ's finding of nondisability was made at step four.  **See id**.

20.  Finally, the Plaintiff argues that the ALJ erred by failing to obtain a medical expert to determine the onset date of her impairments.  There is, however, no need to establish an onset date when no disability has been found.  **See Key v. Callahan**, 109 F.3d 270, 274 (6th Cir. 1997).  Since the ALJ did not find a disability, he was not bound to obtain a medical expert to determine an onset date.  The ALJ, therefore, did not err by failing to obtain a medical expert.

Recommended Disposition

I recommend granting the Plaintiff's Motion to Reverse and Remand for a Rehearing in part. Specifically, I find that the alleged onset date should be amended to August 31, 1988. I also recommend remanding this matter to the Commissioner so that he shall more fully and fairly develop the record regarding the impact of the Plaintiff's mental impairments on her RFC. After the record is fully and fairly developed as described above, the Commissioner shall engage in analysis at step four of the sequential evaluation process and proceed to step five if the circumstances so warrant. Timely objections to the foregoing may be made pursuant to 28 U.S.C. §636(b)(1)(C). Within ten days after a party is served with a copy of these proposed findings and recommendations that party may, pursuant to §636(b)(1)(C), file written objections to such proposed findings and recommendations. A party must file any objections within the ten day period allowed if that party wants to have appellate review of the proposed findings and recommendations. If no objections are filed, no appellate review will be allowed.

Leslie C. Smith
UNITED STATES MAGISTRATE JUDGE